UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
| |
| --- |
| UNITED STATES OF AMERICA |
| |
| v. |
| |
| **GWENIGALE SELEWOYAN**, |
| |
| Defendant. |

GOVERNMENT'S TRIAL BRIEF

Crim. No. 8:18-CR-361

Hon. Norman A. Mordue

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COMES NOW the United States of America, by and through Grant C. Jaquith, the United States Attorney for the Northern District of New York, Edward P. Grogan, of counsel, and hereby submits its Trial Memorandum in the above-titled action.

## I.   STATEMENT OF THE CASE

On February 14, 2019, the Grand Jury returned a one-count Superseding Indictment alleging that on or about October 16, 2018, at or near Champlain, New York, the defendant committed the criminal offense of false material statements to federal officials, in violation of 18 U.S.C. § 1001 (a)(2). The alleged false statements pertain to the defendant's oral assertions during the border inspection process that he was a Legal Permanent Resident of the United States. (The Indictment, docket no. 20). The defendant has pled not guilty.  He is a citizen of Liberia and has resided in the United States since 1993 but is now subject to an order of removal and was released subject to immigration supervision.   He has been detained since his arrest on October 16, 2018.

The Government anticipates a defense of general denial.

Trial is scheduled to begin on May 21, 2019, before the Honorable Norman A. Mordue. Neither the United States nor the defendant has waived the right to a jury trial. The United States estimates the trial will require two days and perhaps part of a third day.

## II.     STATEMENT OF THE FACTS

On October 16, 2018, the defendant was an occupant in a 2016 Hyundai Elantra automobile with Pennsylvania registration that apparently arrived at the Canadian Port of Entry at LaColle, Quebec by mistake that night.  The defendant was a passenger in the car.  According to the Canadian Border Services Agency officers who dealt with the defendant, he claimed that he had made a wrong turn and had arrived at the border by mistake.  A Canadian officer reported to a United States CBP officer that the group of three men had stated that they were attempting to go from Plattsburgh, New York to New Hampshire and made a wrong turn.

Selewoyan and his two companions were asked to follow by car the Canadian officer as he drove to the Champlain POE. Upon arrival at the POE, the defendant and his companions, Augustine Sneh and Alvin Cole, walked into the lobby of the inspection area.   All three of the men were initially asked to declare any items that they may have in their possession and in the car.  They were asked for identification.  The defendant presented a Pennsylvania Driver's License card.

Customs and Border Protection officer Prell asked Selewoyan about his citizenship. Selewoyan answered that he was Liberian but was a U.S. resident.  Officer Prell asked Selewoyan to clarify that he was in fact stating that he was a U.S. Legal Permanent Resident (LPR) and he answered that he was.  Officer Prell then asked Selewoyan if he was in possession of his LPR card or "Green card" and Selewoyan answered that he was not.  Officer Prell asked him where the card was and Selewoyan responded that he left it at home.  Officer Prell then asked him if he was

aware that as a LPR, he was required to have his LPR card with him and Selewoyan answered that he was not planning on leaving the country.    Officer Brault then interviewed Selewoyan. He asked Selewoyan where he was born and his citizenship.   He told Officer Brault that his name was David Gwenigale and provided a date of birth.  Brault asked him where he was born and his citizenship.  Selewoyan answered that he was a resident and that he had an "A number." Brault asked Selewoyan if he was a permanent resident of the United States and he responded "yes."  Brault asked Selewoyan if he had a green card and he responded "yes."

After placing the fingerprints for Selewoyan into the computer, an alien number was revealed for Selewoyan.   Service records revealed to the officers that Selewoyan was assigned a specific alien number and an FBI number.  Record checks indicated that Selewoyan had a criminal record and that he had been ordered deported by an immigration judge on January 20, 2009. Further, records show that an appeal had been filed and withdrawn.  Records also indicated that Selewoayn had not in fact been deported but instead he had been released subject to ICE supervision and that he had failed to report for an ICE supervision inspection on October 27, 2014.

CBP Enforcement Officer Brault looked into the matter.  The individual, Gwenigale Selewoyan, was insisting that he was a Legal Permanent Resident (a green card holder).  Records checks based on fingerprint data, records that CBP officers rely on in the performance of their duties, indicated that Gwenigale Selewoyan was an alien, a citizen of Liberia, and that he was not a Legal Permeant Resident.  Brault determined from official DHS records that Selewoyan was assigned a unique alien registration number.  Record checks also showed that Gwenigale Selewoyan was issued a final order of removal issued by an Immigration Judge on January 20, 2009.  A review of records indicated to Brault that there were no pending immigration appeals or

3

applications for benefits with the United States.  Records also showed that Selewoyan had failed to report for ICE supervision on October 27, 2014; and

−	December 21, 2009 Gwenigale Selewoyan was placed under supervision and was permitted to be at large under conditions because the Department of Homeland Security did not enforce his deportation or removal.

−	September 22, 1997, an applicant for Employment Authorization; and

−	September 22, 1997, Application for temporary protected status in the United States.

−	April 17, 2001, Form I-485, Application to Register Permanent Resident of Adjust Status, denied February 10, 2006.

On October 16, 2018, CBP officers determined that the defendant was not a Legal Permanent Resident of the United States and that he was an alien subject to a removal order. He was arrested and advised of his Miranda warnings by CBP Officer Jason Brault. Gwenigale Selewoyan stated that he never claimed to be a green card holder.  He insisted that he said that he had an alien registration number and that he resided in the United States permanently.

 Selewoyan stated that he had been on the road with his friends for about a week.  He stated that he travelled from Philadelphia to Boston.  He stated that today he went to Plattsburgh from Vermont.   Selewoyan stated to Agents Fay and Quackenbush that they had stayed in Vermont last night.

According to the evidence in the alien file, Gwenigale Selewoyan is not a United States Legal Permanent Resident.  He entered the United States in 1993 as a tourist and overstayed his visa.  He did not leave.  In 1997, he sought permission to stay in the United States under the temporary protected status (TPS) that is available when circumstances are such in the alien's home country that it would be inappropriate to return the individual to his or her home country.

Gwenigale Selewoyan received status in the United States. In 2001, he applied for Permanent Resident status and his request was denied in 2006. As Selewoyan was convicted of criminal offenses, he was processed for removal. As a result of the removal process, he was ordered removed from the United States. He was ordered removed from the United States by an Immigration Judge on January 20, 2009. He was not, in fact, removed however and on December 21, 2009, he was released from ICE custody under an order of immigration supervision. The immigration supervision required that he not travel outside Pennsylvania for more than 48 hours without prior permission, that he report in person to an ICE office as directed, and that he not associate with criminals. When Gwenigale Selewoyan was encountered at the Champlain POE, he was in violation of the terms of his immigration supervision. He had travelled outside the state of Pennsylvania for over 48 hours without permission and he had not reported as directed since October 27, 2014. He was an alien subject to an unexpected removal order and therefore subject to arrest.

### III.   LEGAL SUMMARY OF THE STATUTE

**False statements to a federal official - 18 U.S.C. § 1001 (a) (2)**

The elements of this offense are as follows:

*First,* the Defendant knowingly made a material false statement;

*Second,* the Defendant made the statement voluntarily and intentionally; and

*Third,* the Defendant made the statement in a matter within the jurisdiction of the Department of Homeland Security, Bureau of Customs and Border Protection, an agency in the executive branch of the United States Government.

A false statement is made "knowingly" if a defendant knew that it was false.

A statement is "material" if it has a natural tendency to influence or to be capable of influencing the decision of the decision maker or agency to which it was addressed.

A statement is "false" if it was untrue when made.

## IV.     LEGAL ISSUES AND AUTHORITY

### A.     Evidentiary matters

#### (I)     The defendant's statements are not hearsay.

The Government intends to offer oral and written statements made by the defendant to federal immigration and law enforcement officers as proof of his knowledge that his statements on October 16, 2018 were false and material. Under Rule 801(d)(2) of the Federal Rules of Evidence, such evidence is not hearsay because the declarant is a party- opponent. *See e.g. United States v. Meskini*, 319 F. 3d 88, 93 (2nd Cir. 2003); *United States v. Inserra*, 34 F. 3d 83, 93 (2nd Cir. 1994); Rule 801(d)(2), F.R.E. All of the relevant statements and admissions regarding immigration admissibility are documented in the official DHS immigration file and discovery. What the defendant knew and when are an inextricable part of the *res gestae* in this case, and thus highly relevant and admissible.

#### (II)     The documentation and records contained in the defendant's official immigration file and records are nontestimonial and thus not subject to *Crawford* limitation.

In *Crawford v. Washington*, 541 U.S. 36 (2004), the Supreme Court held that the Confrontation Clause prohibits the admission at trial of testimonial statements that are not subject to cross-examination. Id. at 50-51. However, in this case the official government records of the Department of Homeland Security identified as Government exhibits in this case are not testimonial and thus not subject to these limitations.

is simply a routine, objective, cataloging of an unambiguous factual matter," the document is nontestimonial. *United States v. Bahena-Cardenas,* 411 F.3d 1067, 1075 (9th Cir.2005) (holding that a warrant of deportation is nontestimonial). The Government's exhibits from the defendant's alien file and other official records were not made in anticipation of litigation, but are records routinely made and kept by the Department of Homeland Security. Many are contained within the defendant's alien file ("A-file"), a public immigration record. See *United States v. Ballesteros-Selinger*, 454 F.3d 973, 975 (9th Cir.2006). "Public records[1] ... are not themselves testimonial in nature and ... these records do not fall within the prohibition established by the Supreme Court in *Crawford. United States v. Weiland*, 420 F.3d 1062, 1077 (9th Cir.2005). To the extent the records the Government seeks to admit are non-hearsay statements of the defendant, they are admissible as non-testimonial, public records or regularly maintained business records under Rule 803(6), F.R.E. See *United States v. Feliz*, 467 F.3d 227 (2nd Circ. 2006) (Court's *Crawford* analysis of autopsy reports as nontestimonial and admissible as either business or public records.)

**V.    CONCLUSION**

The United States respectfully submits its trial memorandum to the Court.

                            GRANT C. JAQUITH
                            UNITED STATES ATTORNEY


                  BY:   /s/ Edward P. Grogan
                        Edward P. Grogan
                        Assistant United States Attorney

Bar Roll No. 506388

[1] Rule 803(8) of the F.R.E. addresses the admissibility public records:

Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

## CERTIFICATE OF SERVICE

This document was served upon defense counsel of record electronically through the ECF system

By: */s/ Edward P. Grogan*
     Edward P. Grogan